United States District Court
Southern District of Texas
**ENTERED**
August 12, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| JEFF OLLEY, ET AL., | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 4:24-cv-4667 |
| v. | § | |
| | § | |
| ADRIANNE S. TODMAN, ET AL., | § | |
| *Defendants.* | § | |
| | § | |

## JUDGE PALERMO'S REPORT AND RECOMMENDATION[1]

This is a housing discrimination case. Before the Court are Defendants Harris County's ("Defendant" or "the County") motion to dismiss, ECF No. 32,[2] Texas Workforce Commission's ("Defendant" or "TWC") motion to dismiss, ECF No. 33,[3] Adrianne S. Todman ("Defendant" or "Todman") and the United States Department of Housing and Urban Development's ("Defendant" or "HUD") (collectively, "HUD Defendants") motion to dismiss, ECF No. 34,[4] and Judge Audrey Lawton-Evans'

---

[1] On December 27, 2024, the district judge assigned to this case referred it to this Court for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). Order, ECF No. 15. A motion to dismiss is a dispositive matter appropriate for a report and recommendation. *See* 28 U.S.C. § 636(b)(1); *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016).

[2] Plaintiffs filed a response. ECF No. 41. The County filed a reply. ECF No. 47.

[3] Plaintiffs filed a response. ECF No. 45. TWC filed a reply. ECF No. 48.

[4] Plaintiffs filed a response. ECF No. 46. HUD Defendants filed a reply. ECF No. 49.

("Defendant" or "Lawton-Evans") and Teneshia Hudspeth's ("Defendant" or "Hudspeth") motion to dismiss, ECF No. 50.[5] Having carefully considered the parties' briefings and applicable law, the Court determines that the motions should be granted because *pro se* Plaintiffs Jeff Olley, Aderonke Aderemi, and their minor child, J.O.'s ("Plaintiffs") claims against the County do not subject it to municipal liability, and the other claims are either barred by sovereign immunity or fail to state a claim.

## I.    BACKGROUND

These facts are taken from Plaintiff's amended complaint and are presumed to be true. Plaintiffs allege they timely filed a housing discrimination complaint with HUD on August 17, 2021, but they received no response from HUD until February 3, 2023, and HUD transferred the case to TWC three days later. Pl.'s Am. Compl., ECF No. 29 ¶¶ 41–42. They allege that on March 20, 2023, Myron J. Lewis ("Defendant" or "Lewis"), TWC Civil Rights Division investigator, "in his official capacity" contacted Plaintiffs and later went to Plaintiffs' apartment to conduct a false investigation in which he "willfully covered up prohibited housing practices." *Id.* ¶¶ 46–48. They also allege that a manager of Plaintiffs' apartment and Lewis had signed some documents to "fraudulently and illegally close out Plaintiffs' housing discrimination Complaint…" *Id.* ¶ 50.

---

[5] Plaintiffs filed a response. ECF No. 55.

Plaintiffs further allege that during the "false investigation," Lewis committed forgery in conspiracy with the manager by signing on Plaintiff Aderonke Aderemi's signature line to obtain an access key to Plaintiffs' apartment. *Id.* ¶ 51. Plaintiffs allege that after reporting the above acts to TWC, their reports and complaints were ignored and covered up. *Id.* ¶ 52. Additionally, they assert that Lewis "delayed the housing response time" and failed to serve a subpoena on Massandra KV Vineyards Owner LLC ("Massandra KV") and Plaintiffs' complaint on PAC Vineyards LLC, both of whom allegedly mistreated Plaintiffs. *Id.* ¶¶ 61–62.

Plaintiffs also assert that, despite Lewis and the manager expressing reluctance/refusal to fix Plaintiffs' 20-year-old leaking boiler system on May 22, 2023, the next day, they sought immediate access to Plaintiffs' apartment because the boiler was leaking into another resident's garage, as opposed to that resident's apartment. *Id.* ¶¶ 67, 70. Plaintiffs allege that the resident is in a different protected class from Plaintiffs and that Lewis and the manager colluded to cover up the apparently differential treatment, by, for instance, stating that the leaks began on May 28 after the resident stated that she had no leaks between May 22 and May 25. *Id.* ¶¶ 67, 72, 77.

Plaintiffs also allege that when they sought access to the full investigative report regarding their housing complaint, they were denied the full record, and when they asked "Bryan Daniel in his capacity as the commissioner for the Public" to

investigate the fraud in his department, he refused to do so. *Id.* ¶¶ 84–85. Plaintiffs also allege "Bryan Snoddy in his capacity as the Civil Rights Director [of TWC]" "signed a fraudulent Housing investigation," "cover[ed] up an unlawful housing alleged investigation by Myron J Lewis," "illegally signed a fraudulent No Cause Determination to close out Plaintiffs [sic] housing discrimination," and "failed to disciple [sic] Myron J Lewis." *Id.* ¶¶ 91–94. In addition, Plaintiffs allege that TWC Civil Rights Division "failed to issue a charge and commence legal action against Massandra KV for it [sic] intentional discrimination housing practices against Plaintiffs." *Id.* ¶ 95.

Plaintiffs also contend that "HUD Secretary violated all the state and federal law by it [sic] late response to Plaintiffs [sic] fair housing complaints…Plaintiff sent several email [sic] to HUD official but it declined a respond [sic] to its Housing Complaint." *Id.* at 38.[6]

In addition, Plaintiffs assert that on December 6, 2021, before a hearing on a forcible detainer action, Judge Lawton-Evans wrongfully allowed an attorney, Brice Beale ("Beale"), who had not filed a notice regarding his substitution as Massandra KV's attorney, to serve as its attorney. *Id.* ¶ 107. Further, on April 4, 2022, Beale submitted "an illegal Final Judgment Order to execute an immediate Writ of

---

[6] Plaintiffs also make various allegations against Ken Paxton, *see* ECF No. 29 at 36–38, but he is not a Defendant in this case.

Possession to be executed on April 7th, 2022 and set a supersedeas bond of $12,480.00," and Lawton-Evans signed the order. *Id.* at 41–42. As a result, Plaintiffs allegedly paid the same amount to the County court. *Id.* at 43.

Plaintiffs additionally allege that, on April 25, 2022, they filed an "Emergency Motion for injunctive relief hearing…on the basis that Massandra KV had constructively evicted Plaintiffs without judicial process" and that Lawton-Evans "in her official capacity denied Plaintiffs [sic] right to be heard and abused Plaintiffs [sic] Right to relief by law." *Id.* at 43–44. They also allege that on June 9, 2022, "Beale sent an ex parte letter to Judge Lawton-Evans, instructing Judge Evans to personally coordinate the Writ of Possession against Plaintiffs," that on the same day "Harris County Clerk accepted payment from…Beale for a Writ of Possession despite an Appeal Bond it had received from Plaintiffs," and that "Harris County Clerk accepted and filed an illegal request for a Writ of Possession against Plaintiffs' [sic] from another law firm Andrews Myers Pc who were [sic] never a Party to the lawsuit…" *Id.* at 45. "Harris County Clerk…illegally imputed Andrews Myers PC…into the Harris County system…because it could not issue writ of possession to Brice Beale because he was not the counsel of record." *Id.* at 46.

Plaintiffs further allege that although they had posted bond since April 6, 2022, which suspended the April 5, 2022 Final Judgment, on July 15, 2022 Lawton-Evans nonetheless granted Beale's request for an immediate Writ of Possession in

conformity with April 5th 2022 Final Judgment…" thereby denying Plaintiffs possession of the premises. *Id*. at 46–48. Additionally, they allege that on "July 15th 2024[7] the First Court of Appeals of the First District of Texas" granted "Plaintiffs [sic] Petition for Mandamus," signing a "Stay of Execution of [the] illegal Writ of Possession pending the Final resolution of the Appeal." *Id.* at 48. Plaintiffs allege that three days later, Lawton-Evans, Beale, and Andrews Myers conspired to illegally impute Andrews Myers PC "into the Court System by the Harris County Clerk," instead of having Andrews Myers e-file the change of address/legal representation. *Id.* at 49. According to Plaintiffs, a day later, on July 19, 2022, the Harris County Constable Posted a 24 hr. Vacate Notice on Plaintiffs [sic] Apartment front door…" *Id.* at 50.

Plaintiffs allege as "counts" that: (1) Lewis committed fraud, *id.* at 22; (2) Snoddy "failed to enforce Fair housing law," *id.* at 25; (3) "TWC Open Records Dept violated Plaintiffs right to retrieve Full Investigative Report of the Housing Complaint," *id.* at 32; (4) "Breach of Fiduciary duty by HUD TWCCRD and Myron J Lewis," *id.* at 33; (5) "TWCCRD Snoddy Failed to follow Policies and Fair Housing Act" and "HUD Secretary are in violation of Plaintiffs [sic] right governing fair housing under the constitution enacted by congress," *id.* at 34, 35; (6) "Ken

---

[7] Plaintiffs appear to have meant 2022, given that the preceding and succeeding paragraphs only discuss dates in July 2022.

Paxton[8] and TWCCRD Housing Record department are In violation of the Public Information Act," *id.* at 36; (7) "Ken Paxon [sic] under color of law failed to follow laws which govern releasing Open Records," *id.* at 37; (8) HUD Secretary violated all the state and federal law by it [sic] late response to Plaintiffs [sic] fair housing complaints," *id.* at 38; (9) "Harris County And … Judge Audrie Lawton Evans And Tenesha Hudspeth Under Section 1983 Are In Violation Of 42 U.S. Code § 1985 – Conspiracy To Interfere With Civil Rights (2) Obstructing Justice; Intimidating Party, Witness, Or Juror And The Equal Protection Clause Of The Fourteenth Amendment Due Process Violations," *id.* at 39; and (10) repeats allegations of Fourteenth Amendment Equal Protection and Due Process violations and violations of 42 USC 1985, *id.* at 51. Plaintiffs seek damages and equitable relief. *Id.* at 53–54.

Defendants in their motions to dismiss assert various immunities and dispute the successful statement of any claims against them. *See* ECF Nos. 32, 33, 34, 50.

## II.    THE MOTION TO DISMISS STANDARDS.

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). If a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court considers the jurisdictional attack under

---

[8] The Court again notes that Ken Paxton is not a defendant in this action and therefore does not address any claims against him.

Rule 12(b)(1) before addressing the merits. *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 481 (5th Cir. 2024) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

The burden of proof for a 12(b)(1) motion to dismiss "is on the party asserting jurisdiction," so "plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Shemwell v. City of McKinney, Tex.*, 63 F.4th 480, 483 (5th Cir. 2023) (internal quotation marks omitted) (quoting same). A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020) (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).

"A *pro se* plaintiff's pleadings must be read in a liberal fashion, and however unartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers." *Alford v. Tex.*, No. 4:24-CV-1679, 2025 WL 373447, at *2 (S.D. Tex. Feb. 3, 2025) (cleaned up) (quoting *Greenway v. Wilkie*, Civ. Action No. H-18-3776, 2018 WL 5921224, at *3 (S.D. Tex. Nov. 13, 2018) (internal quotation omitted)).

## B. Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief

can be granted." FED. R. CIV. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (internal quotation marks omitted) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (cleaned up)). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). A complaint must "contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the pleaded factual contents allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hack v. Wright*, 396 F. Supp. 3d 720, 747 (S.D. Tex. 2019) (internal quotation marks omitted) (quoting *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012)). "A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Id.* (cleaned up) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.

2007) (internal quotation omitted)).

The ultimate question "is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 845 (S.D. Tex. 2018) (internal quotation marks omitted) (quoting *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012)). "In considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true." *Id.* (cleaned up) (quoting *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 665 (S.D. Tex. 2010)). "Courts are required to dismiss, pursuant to Rule 12(b)(6), claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Id.* (cleaned up) (quoting *Farshchi v. Wells Fargo Bank, N.A.*, Civ. Action No. H-15-1692, 2016 WL 2858903, at *2 (S.D. Tex. May 13, 2016) (internal citation omitted)).

## III.   PLAINTIFFS' CLAIMS AGAINST THE HUD DEFENDANTS SHOULD BE DISMISSED.

"In order to properly file suit against the United States or one of its agencies, a complaint must identify a statute that confers subject-matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States for each cause of action. *Soniat v. Dep't of Hous. & Urb. Dev.*, No. 4:16-CV-00337, 2016 WL 7664304, at *2 (E.D. Tex. Dec. 16, 2016), *adopted*, No. 4:16CV337, 2017 WL 68562 (E.D. Tex. Jan. 6, 2017) (citing *Creamer v. United*

*States*, 261 F. App'x 814, 814 (5th Cir. 2008)); *Blanche v. U.S. Dep't of Hous. & Urb. Dev.*, No. CV 23-31, 2023 WL 3168338, at *2 (W.D. La. Apr. 28, 2023) (quoting *Alpha Tech. USA, LLC v. United States*, No. 14-CV-304, 2015 WL 137303, at *2 (E.D. Tex. Jan. 7, 2015) (internal quotation omitted)). "Claims against federal employees in their official capacities based on alleged constitutional violations are barred under *Bivens* because they are equivalent to claims against the federal agencies who employ those employees." *Crouse v. Tolliver*, No. 3:20-CV-0113-N-BH, 2020 WL 3038581, at *2 (N.D. Tex. Apr. 24, 2020), *adopted*, No. 3:20-CV-0113-N-BH, 2020 WL 3037225 (N.D. Tex. June 5, 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)).

Plaintiffs assert that, after filing a complaint with HUD, "Plaintiffs did not get a response from HUD for almost 2 years," ECF No. 29 ¶ 42; "HUD government employees…in their official capacity under color of law violated the state statute and federal laws and failed to enforce the Fair Housing Law enacted by Congress, by fraud, forgery and unlawfully closed out Plaintiffs Housing discrimination complaint on July 3rd 2023," *id.* ¶ 18;[9] "HUD Adrianne S. Todman in her capacity as the HUD secretary without following the procedural and substantive due process

---

[9] A review of Plaintiffs' response to TWC's motion to dismiss reveals that Plaintiffs were alleging closure of the complaint against TWC, not the HUD Defendants: "On July 3rd 2023 TWC Civil Rights Director Bryan Snoddy in his Official Capacity in the scope of his duties without a legal signature fraudulently closed out [Plaintiffs'] Housing Complaint." ECF No. 45 ¶ 10.

clause, denied Plaintiffs request for reconsideration [of Plaintiffs' housing complaint]," *id.* ¶ 19; "HUD secretary failed to perform its duties under the fair housing act," *id.* ¶ 33; "HUD has failed to respond to Plaintiffs [sic] Housing Complaint in violation of 42 USC 3617, *id.* ¶ 40";[10] "HUD Secretary are [sic] in violation of Plaintiffs [sic] right governing fair housing under the constitution enacted by congress," *id.* at 35; and "HUD Secretary violated all the state and federal law by it [sic] late response to Plaintiffs fair housing complaints," *id.* at 38.

"It is well-settled the federal question statute—28 U.S.C. § 1331—is not a waiver of sovereign immunity." *Soniat*, 2016 WL 7664304, at *3 (citing *See Humphreys v. United States*, 62 F.3d 667, 673 (5th Cir. 1995)). Additionally, "the Fair Housing Act does not 'unambiguously waive' the government's sovereign immunity defense...." *McCardell v. U.S. Dep't of Hous. & Urb. Dev.*, 794 F.3d 510, 522 n.89 (5th Cir. 2015) (quoting *Boyd v. Browner,* 897 F. Supp. 590, 594–95 (D.D.C. 1995)). Further, while Plaintiffs' claim about a violation of "procedural and substantive due process" implicates the Fifth Amendment,[11] the "Fifth Amendment does not provide a self-executing waiver of sovereign immunity." *Galbearth-Robair v. U.S. Equal Opportunity Comm'n*, No. 4:19-CV-4797, 2021 WL 415194, at *1

---

[10] 42 U.S.C. § 3617 is a section of the Fair Housing Act. 42 U.S.C. §§ 3601 et seq.

[11] The Fifth Amendment applies to actions by the federal government. *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 236 (5th Cir. 2022) ("The clauses differ only in that the Fifth Amendment Due Process Clause limits the federal government, while the Fourteenth Amendment Due Process Clause limits the states.").

(S.D. Tex. Jan. 18, 2021), *adopted*, No. 4:19CV4797, 2021 WL 413525 (S.D. Tex. Feb. 5, 2021) (quoting *Sammons v. United States*, 860 F.3d 296, 300 (5th Cir. 2017)); *Wije v. Tex. Woman's Univ.*, No. 4:14-CV-571-ALM-CAN, 2015 WL 9872534, at *7 (E.D. Tex. Dec. 22, 2015), *adopted*, No. 4:14-CV-571, 2016 WL 231151 (E.D. Tex. Jan. 19, 2016) (first citing *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994); then citing *Garcia v. U.S.*, 666 F.2d 960, 966 (5th Cir. 1982); and then citing *Hopes v. Roche,* No. RDB–04–2963, 2005 WL 1812820, at *7 (D.Md. Aug. 2, 2005)) ("Nor under existing law do the Due Process and Equal Protection clauses of the Fifth Amendment contain a waiver of sovereign immunity.").

With respect to the "right governing fair housing under the constitution enacted by congress," the Court cannot discern what provision of the Constitution Plaintiffs are referring to, let alone what waiver of immunity could apply. As just noted, neither the Due Process nor Equal Protection clauses of the Fifth Amendment contain a waiver of sovereign immunity. *Wije*, 2015 WL 9872534, at *7. Lastly, Plaintiffs' allegation that "HUD Secretary violated all the state and federal law" gives the Court no insight on the specific laws Todman allegedly violated and hence any applicable waivers of immunity.

In short, Plaintiffs have not alleged any waiver of sovereign immunity with respect to any monetary claims against the HUD Defendants.

In their response to the HUD Defendants' motion to dismiss, Plaintiffs mention that "[u]nder the Federal Tort Claims Act (FTCA) 2675, the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States." ECF No. 46 at 12. "The Fifth Circuit has emphasized that the FTCA's administrative-exhaustion requirement is a jurisdictional prerequisite to filing suit." *Brown v. United States*, No. 3:23-CV-00122, 2023 WL 7166825, at *3 (S.D. Tex. Oct. 31, 2023), *adopted*, No. 3:23-CV-122, 2023 WL 8480065 (S.D. Tex. Dec. 7, 2023) (first citing *Coleman v. United States*, 912 F.3d 824, 834 (5th Cir. 2019); then citing *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030 (5th Cir. 2011); and then citing *McAfee v. 5th Cir. Judges*, 884 F.2d 221, 222–23 (5th Cir. 1989)). Plaintiffs have not alleged that they exhausted their administrative remedies, and the Court will not presume that they did. "As a result, Plaintiffs' failure to exhaust their administrative remedies prior to filing an action under the FTCA deprives the Court of subject matter jurisdiction over their suit." *Id.*

With respect to injunctive relief, "Plaintiffs [are] requesting for an Order enjoining…HUD…to enforce the *42 U.S.C. §§ 3601-19* Title VIII of the Civil Rights Act of 1968 (Fair Housing Act)," and "Plaintiffs seek injunctive relief under 5 U.S.C. § 702, Against…HUD Adrianne S. Todman In her capacity as the United States Secretary of Housing and Urban Development…" ECF No. 29 at 10.

Under § 702:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States[.]

5 U.S.C. § 702.

As the Fifth Circuit noted, "[e]very one of our sister circuits has construed § 702's plain language as a waiver of sovereign immunity for all equitable actions, regardless of whether they arise under the APA or other federal law," *Tex. v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 201 (5th Cir. 2024) (collecting cases), and "at least four of those circuits have logically taken that principle to mean that the § 702 waiver applies to *state* law claims for nonmonetary relief," *id.* (emphasis in riginal) (citing *Perry Cap. v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017)).

Plaintiffs' allegations that the HUD Defendants "in their official capacity under color of law...closed out Plaintiffs [sic] Housing discrimination complaint on July 3rd 2023" and "denied Plaintiffs request for reconsideration [of Plaintiffs' housing complaint]" satisfies § 702. *See id.* "Accordingly, § 702 directs that

[Plaintiffs'] suit 'shall not be dismissed nor relief therein be denied on the ground that it is against the United States.'" *Id.*[12]

However, Plaintiff must also state a claim for which relief can be granted. Regarding Plaintiffs' allegation that the HUD Defendants failed to timely respond to their complaint, although 52 U.S.C. § 3610(a)(1)(B)(ii) requires the Secretary of HUD to serve a notice on Plaintiffs within ten days of the filing of the complaint, § 3610(f) states that "(1) Whenever a complaint alleges a discriminatory housing practice—(A) within the jurisdiction of a State or local public agency; and (B) as to which such agency has been certified by the Secretary under this subsection; the Secretary shall refer such complaint to that certified agency *before taking any action with respect to such complaint*." (emphasis added). The parties do not dispute that the alleged discriminatory housing practice(s) fall within the jurisdiction of TWC nor that TWC was certified under that subsection. Because § 3610(f) applies, Todman was not required to serve the notice on Plaintiffs within ten days.

Furthermore, Todman was not required to take any additional action with respect to the complaint unless:

(A) the certified agency [ ] failed to commence proceedings with respect to the complaint before the end of the 30th day after the date of such referral; (B)

---

[12] Plaintiffs need not first demonstrate that their claims have merit—i.e., whether Plaintiffs truly are "suffering a legal wrong because of agency action," under § 702—for the Court to consider whether sovereign immunity is waived under the APA. *Desai v. Jaddou*, No. SA-21-CV-00927-OLG, 2022 WL 17732708, at *2 (W.D. Tex. Sept. 23, 2022) (collecting cases) (joining courts "that consider their jurisdiction in an APA case 'without needing to assess the merits' of the claims itself").

the certified agency, having so commenced such proceedings, fail[ed] to carry forward such proceedings with reasonable promptness; or (C) the Secretary determine[d] that the certified agency no longer qualifies for certification under this subsection with respect to the relevant jurisdiction.

§ 3610(f)(2). Plaintiffs only cited subsection (A), ECF No. 46 at 5–6 ("Pursuant to 42 USC 3610 the agency has to commence proceeding [sic] of the complaint before the end of the 30th day after the date of such referral;"), but did not allege facts suggesting that TWC failed to commence proceedings within that timeframe. All Plaintiffs alleged was that, after HUD transferred Plaintiffs' complaint on February 6, 2023, TWC reached out to Plaintiffs on March 20, 2023 "in regards to Plaintiffs [sic] housing complaint." ECF No. 29 ¶ 46. There is no suggestion that March 20th was the date TWC commenced proceedings; proceedings could have begun before that date.

Regarding Todman's alleged denial of Plaintiffs' request for reconsideration of their housing complaint, aside from a reference to the "procedural and substantive due process clause," Plaintiffs have not identified any statutory provision Todman may have violated in refusing to reconsider their complaint, and the Court is not aware of any caselaw supporting a claim on this basis, whether under the Constitution or a statute.

Because Plaintiffs have failed to state a claim against the HUD Defendants, their claims against them should be dismissed.

## IV.    PLAINTIFFS' CLAIMS AGAINST TWC, LEWIS, SNODDY, AND DANIEL SHOULD BE DISMISSED.

"Under the Eleventh Amendment, '[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.'" *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025) (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014)). "But under the rule of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), 'a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution.'" *Id.* (quoting *Moore*, 743 F.3d at 963).

"For a suit against a state official to proceed under *Ex parte Young*, three criteria must be satisfied: (1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Id.* (cleaned up) (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc) (internal citations omitted)). This is a straightforward inquiry. *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011)) ("[A] court need only conduct a 'straightforward inquiry into whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'").

Plaintiffs have neither identified a federal statute abrogating TWC's Eleventh Amendment immunity nor pleaded any waiver of immunity against TWC. Therefore, their claims against TWC should be dismissed. *Kio v. Fam. L. Ctr.*, No. CV H-18-1287, 2019 WL 1407254, at *3 (S.D. Tex. Mar. 28, 2019) (holding suit against Texas agency was barred by Eleventh Amendment where plaintiff failed to identify a federal statute abrogating immunity or show a waiver of immunity). Furthermore, because "[a] suit against a state official in their official capacity 'is no different from a suit against the State itself,'" and Plaintiffs are suing Lewis, Snoddy, and Daniel in their official capacities,[13] they are barred from doing so under the Eleventh Amendment unless the *Ex parte Young* exception applies. *Id.* (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989)) ("[T]he Eleventh Amendment extends to state officials sued in their official capacity.").

Because Plaintiffs name Lewis, Snoddy, and Daniel in their official capacities, Plaintiffs satisfy the first element of *Ex Parte Young*. However, despite mentioning the word "ongoing" multiple times in their amended complaint, such as alongside "constructive eviction," ECF No. 29 at 11, 51, or generically in "ongoing Housing

---

[13] *See* ECF No. 29 at 1–2 (identifying Defendants as "Bryan Daniel in his capacity as the Commissioner for the Public, Bryan D. Snoddy in his capacity as the Civil Rights Director, Myron J. Lewis in his capacity as Investigator for Civil Rights Division…").

prohibited practices," *id.* at 35, or "ongoing emotional injuries," *id.* at 54, Plaintiffs do not allege anything that resembles an ongoing violation by *these officials*. Plaintiffs allege that Massandra KV is the one performing the "ongoing constructive eviction," not Lewis, Snoddy, or Daniel. ECF No. 29 at 11 ("Massandra KV…began the process of a second discriminatory eviction lawsuit concurrently with its ongoing constructive eviction…"). Accordingly, Plaintiffs also have not identified an ongoing violation of *federal law* by these officials.

Therefore, Plaintiffs' claims against Lewis, Snoddy, and Daniel should also be dismissed.

## V.    PLAINTIFFS' CLAIMS AGAINST THE COUNTY SHOULD BE DISMISSED.

A municipality cannot be held vicariously liable under § 1983 for the conduct of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a claim against the County under § 1983, Plaintiff must plausibly allege: (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights behind which the "moving force" was the policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

"In some cases, where there may not be an express policy or custom in place to satisfy the first element of a *Monell* claim, the plaintiff can instead allege that the action of a single 'policymaker' caused the injury." *Doe v. Burleson Cnty., Tex.*, 86 F.4th 172, 176 (5th Cir. 2023). "In rare circumstances, a single unconstitutional

action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question." *Id.* (internal quotation marks omitted) (first citing *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (internal citation and internal quotation marks omitted); and then citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). "But only those municipal officials who have final policymaking authority may by their actions subject the municipality to § 1983 liability." *Id.* (cleaned up) (quoting *Praprotnik*, 485 U.S. at 123).

"A final policymaker is one that has the responsibility for making law or setting policy in any given area of a local government's business—in other words, one that decides the goals for a particular city function and devises the means of achieving those goals." *Id.* (cleaned up) (quoting *Sweetin v. City of Tex. City, Tex.*, 48 F.4th 387, 392 (5th Cir. 2022)). "When a final policy maker makes the relevant decision, and when that decision is within the sphere of the policy maker's final authority, the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." *Id.* at 176–77 (internal quotation marks omitted) (quoting *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (internal citation and internal quotation marks omitted)). "And whether a particular official has final policymaking authority is a question of state law." *Id.* at 177 (cleaned up) (quoting *Praprotnik*, 485 U.S. at 123 (emphasis removed)). Thus, Plaintiffs' claim

against the County turns on whether Lawton-Evans or Hudspeth "possessed final policymaking authority under Texas law for the actions in question." *Id*[14]

"In addition to his judicial duties, a Texas county judge is charged by the state constitution and statutes with the performance of numerous executive, legislative and administrative chores in the day-to-day governance of the county." *Id.* (internal quotations marks omitted) (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)). "Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983." *Id.* (internal quotation marks omitted) (quoting same (internal quotation omitted)). "The question, then, is whether the factual scenario here involves an area in which [Lawton-Evans] 'alone' had the final say over policymaking." *Id.*

Despite her position as County Judge, Lawton-Evans lacked the requisite policymaking authority to hold the County liable for her alleged misconduct. "*Monell* requires that 'the municipal official ... possess[ ] final policymaking authority for *the action in question*.'" *Id.* (emphasis in original) (quoting *Davidson*, 848 F.3d at 395 (internal citation and internal quotation marks omitted)). Even if the

---

[14] The Court notes that Plaintiffs did not even address the *Monell* policy or policymaker elements in their amended complaint.

Texas constitutional provision gave Lawton-Evans, as County Judge, broad ability to oversee operations in the county, this authority is immaterial because Plaintiffs fail to establish that Lawton-Evans possessed the requisite policymaking authority as it relates specifically to the acceptance of Beale as counsel, the signing of the order, denial of Plaintiffs' requested injunctive relief hearing, granting of Beale's request to grant an immediate Writ of Possession, and imputation of Myers into the County court system.[15] *See id.*

Plaintiffs also have not alleged that Hudspeth has any policymaking authority to hold the County liable for her alleged misconduct. The Texas Constitution merely states as to county clerks that "[t]here shall be elected for each county…a County Clerk…whose duties…shall be prescribed by the Legislature…" TEX. CONST. art. 5 § 20. Plaintiffs fail to establish that Hudspeth possessed the requisite policymaking authority regarding her alleged acceptance of payment from Beale, acceptance and filing of a request by Andrews Myers PC for the Writ of Possession, imputation of Andrews Myers PC into the County system, and changing of address/representation to Andrew Myers PC.[16]

Lastly, Plaintiffs have not alleged that the County Constable has policymaking authority to hold the County liable for the alleged misconduct. Regardless, "[t]he

---

[15] These facts are discussed in I. Background.
[16] These facts are discussed in I. Background.

Fifth Circuit has frequently applied Texas law in a variety of factual situations pertinent to municipal liability" and "has consistently held as a matter of law that constables are not policymakers for the county, and so a county cannot be held liable for a constable's conduct." *Doe on behalf of M.F. v. Harris Cnty. Precinct Six Constable Sylvia Trevino*, 452 F. Supp. 3d 548, 559 (S.D. Tex. 2020) (first citing *Rhode v. Denson*, 776 F.2d 107, 110 (5th Cir. 1985); then citing *Bowden v. Jefferson Cnty.*, 676 F. App'x 251, 254–55 (5th Cir. 2017); and then citing *Harris Cnty. v. Coats*, 607 S.W.3d 359, 379 (Tex. App.—Hous. [14th Dist.] 2020)).

Even if Plaintiffs did properly allege policymaking authority, Plaintiffs have not alleged in their complaint any facts regarding a custom or policy.[17] Therefore, Plaintiffs' *Monell* claims against the County should be dismissed. *Moore v. City of Dallas, Tex.*, No. 23-10566, 2024 WL 913368, at *4 (5th Cir. Mar. 4, 2024) (affirming district court's dismissal of the plaintiff's *Monell* claims where he "failed to allege an actionable policy"); *Hartt as next friends for J.H. v. Evadale Indep. Sch.*

---

[17] After failing to identify any policy or policymaker in their amended complaint, Plaintiffs include in their response to the County's motion to dismiss new factual allegations about "Harris County Finance Manager Dylan and Harris County deputy of Courts (Shane Holman)" to support the *Monell* policy/policymaker elements. ECF No. 41 at 35–37, 39. "Unlike new claims or legal theories that are included in an opposition to a dispositive motion, the Court is not obligated to treat new factual allegations as a request for leave to amend the complaint, unless plaintiffs explicitly request leave to amend and state the particular grounds upon which the amendment is sought." *Guidry v. Allstate Fire Cas. Ins. Co.*, No. CV 18-6660, 2019 WL 1002537, at *5 (E.D. La. Mar. 1, 2019) (citing *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 n.6 (5th Cir. 2015)). "Plaintiffs do not explicitly request leave to amend their complaint in their opposition brief, nor do they state why they would have grounds to amend. Accordingly, the Court will not consider the new factual allegations contained in plaintiffs' opposition brief." *Id.*

*Dist.*, 772 F. Supp. 3d 749, 762 (E.D. Tex. 2025) ("Because Hartt failed to properly allege the existence of an official policy, she cannot state a claim for liability under *Monell*.").

With respect to Plaintiffs' § 1985 conspiracy claim against the County, "[t]he law presumes that municipalities are incapable of entering into conspiracies." *Pickett v. Williams*, No. 3:17-CV-557-C-BH, 2019 WL 3021196, at *7 n.5 (N.D. Tex. June 24, 2019), *adopted*, No. 3:17-CV-557-C-BH, 2019 WL 3006985 (N.D. Tex. July 10, 2019) (first citing *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998); and then citing *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)). "The county therefore cannot be liable under § 1985." *Id.* (first citing *Mitchell v. City of Sugar Land*, No. G–10–223, 2011 WL 1156253, at *8 (S.D. Tex. Mar. 25, 2011); and then citing *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 986 (E.D. Tex. 2005)); *Marshall v. Abbott*, No. 4:21-CV-384-SDJ-CAN, 2022 WL 671004, at *4 (E.D. Tex. Feb. 9, 2022), *adopted*, No. 4:21-CV-384, 2022 WL 659144 (E.D. Tex. Mar. 4, 2022) (citing *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 988 (E.D. Tex. 2005)) ("Municipalities are generally presumed to be incapable of entering into a conspiracy; hence, municipalities cannot be liable in actions brought pursuant to § 1985.").

This is true even where the alleged conspirators include employees of the municipality; such a § 1985 claim would be barred by the "intra corporate

conspiracy" doctrine. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 462 F. Supp. 3d 674, 691 (W.D. Tex. 2020), *aff'd*, 9 F.4th 328 (5th Cir. 2021) (discussing the applicability of the intra corporate conspiracy doctrine); *Hudson v. Jones Cnty.*, No. 2:10CV147KS-MTP, 2011 WL 4625428, at *8 (S.D. Miss. Oct. 3, 2011) (first citing *Ferguson,* 30 F.3d at 653; and then citing *Thompson v. City of Galveston,* 979 F. Supp. 504, 511–12 (S.D. Tex. 1997)) ("[I]n the Fifth Circuit, a municipality and its employees are considered to be a single legal entity, and the entity is therefore incapable of conspiring with itself for purposes of satisfying Section 1985."). Therefore, Plaintiffs cannot state a claim of conspiracy among the County, Lawton-Evans, and Hudspeth.

Thus, Plaintiffs' claims against the County should be dismissed.

## VI.    PLAINTIFFS' CLAIMS AGAINST LAWTON-EVANS AND HUDSPETH SHOULD BE DISMISSED.

Because the claims against Lawton-Evans and Hudspeth are alleged against them in their official capacities,[18] these claims are duplicative of those asserted against the County and accordingly should be dismissed. *See Degollado v. City of*

---

[18] Plaintiffs' response to Lawton-Evans and Hudspeth's motion to dismiss makes clear that they are suing both Defendants in their official capacities. *See, e.g.,* ECF No. 55 at 2–3 ("Plaintiffs [sic] rights was [sic] brutally violated under the Constitution by Government officials Audrie Lawton-Evans and Teneshia Hudspeth in their official capacity…" and "Audrie Lawton-Evans and Teneshia Hudspeth in their official capacity under color of law continued in the second eviction to use the legal system for unlawful acts…").

*Port Lavaca, Tex.*, No. 6:23-CV-00014, 2025 WL 976603, at *11 (S.D. Tex. Mar. 31, 2025) ("Defendants also argue that Plaintiffs' official-capacity claims against the officers are duplicative of the claims against the City of Port Lavaca." (docket citation omitted) "The Court agrees."); *Acklin v. City of Conroe, Tex.*, No. 4:22-CV-3713, 2023 WL 5279813, at *4 (S.D. Tex. June 20, 2023), *adopted sub nom. Acklin v. Aurora Med. Ctr. of Colorado*, No. CV H:22-3713, 2023 WL 5279462 (S.D. Tex. Aug. 10, 2023) (citing *Preacely v. City of Hous.*, No. CIV. H-10-0492, 2010 WL 1903754, at *1 (S.D. Tex. May 11, 2010)) ("If a plaintiff sues both an individual in their official capacity as well as the municipality itself, dismissal of that individual may be obtained because the claims are duplicative."). *See also Diogu v. George*, No. 4:24-CV-3590, 2025 WL 1476651, at *4 (S.D. Tex. May 2, 2025), *adopted*, No. 4:24-CV-03590, 2025 WL 1476579 (S.D. Tex. May 22, 2025) (first quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); and then citing *Moss v. Harris Cnty.*, No. CV H-14-2180, 2016 WL 9049981, *2 (S.D. Tex. Jan. 13, 2016)) ("The Supreme Court has established that 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.'").

## VII.    CONCLUSION

Therefore, the Court **RECOMMENDS** that the motions to dismiss, ECF Nos. 32, 33, 34, and 50 be **GRANTED** and this case be **DISMISSED with PREJUDICE**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 12, 2025, at Houston, Texas.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**